**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, TEXAS BULLION DEPOSITORY, and KELLY HANCOCK in his capacity as ACTING TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,<br><br>*Plaintiffs*,<br><br>v.<br><br>TEXAS PRECIOUS METALS, LLC,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 7:26-CV-00021-O |

---

**BRIEF IN SUPPORT OF DEFENDANT TEXAS PRECIOUS METALS, LLC'S
MOTION TO TRANSFER OR, ALTERNATIVELY,
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Respectfully submitted,
/s/ *Shannon Zmud Teicher*
Shannon Zmud Teicher
Texas Bar No. 24047169
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
T: (214) 953-5987 | F: (214) 661-6844 |
steicher@jw.com

Tori C. Emery
Texas Bar No. 24126228
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
T: (713) 752-4428 | F: (713) 752-4221 |
temery@jw.com

Allison B. Allman
Texas Bar No. 24094023
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
T: (817) 334-7200 | F: (817) 334-7290 |
aallman@jw.com

*Attorneys for Defendant Texas Precious Metals, LLC*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.    LEGAL STANDARD...........................................................................................2

    A.    First-to File Rule ..................................................................................... 2

    B.    Rule 12(b)(3) – Venue ............................................................................ 3

    C.    Rule 12(b)(6) – Failure to State a Claim................................................ 4

III.    ARGUMENT.......................................................................................................5

    A.    First-to-file rule mandates transfer to the Western District of Texas. ................... 5

    B.    The Northern District of Texas is an improper venue for this dispute. .................. 8

        1.    Venue is not proper because TPM does not reside in this district. ............ 8

        2.    Venue is not proper because no substantial part of the events giving rise to Plaintiffs' claims occurred in this District. ........................ 12

    C.    Plaintiffs' claim for declaratory relief fails as a matter of law. ........................... 13

        1.    Plaintiffs cannot obtain relief under the Texas Declaratory Judgment Act. ....................................................................................... 13

        2.    Plaintiffs are not entitled to declaratory judgment on their theory that TPM cannot show that Plaintiffs are using TPM's trademarks "as marks."................................................................................ 14

        3.    Plaintiffs are not entitled to declaratory relief under Tex. Bus. & Com. Code § 16.102 because Plaintiffs do not allege any trademarks registered with the Texas Secretary of State......................... 16

        4.    Plaintiffs have not sufficiently pled priority. ........................................... 17

        5.    Plaintiffs failed to properly plead an antitrust claim............................... 17

    D.    Plaintiffs' trademark-cancellation claim fails as a matter of law.......................... 19

        1.    TPM's Marks are not barred from registration under 15 U.S.C. § 1052(b). ............................................................................... 19

2.    TPM's Marks cannot be cancelled as generic..........................................20

3.    Plaintiffs have not sufficiently pled misrepresentation of source. ............23

IV.    CONCLUSION...............................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Univ. Sys., Inc. v. Am. Univ.*,
   858 F. Supp. 2d 705 (N.D. Tex. 2012) ..............................................................12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................4, 5

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990)..............................................................................................17

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008)............................................................................10

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
   536 F.3d 439 (5th Cir. 2008) ..................................................................................4

*Bank of Am. v. Berringer Harvard Lake Tahoe*,
   No. 3:13-CV-0585-G, 2013 WL 2627085 (N.D. Tex. June 12, 2013) .....................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................4, 5

*Blue Bell, Inc. v. Farah Mfg. Co.*,
   508 F.2d 1260 (5th Cir. 1975) ..............................................................................17

*Bradley v. Cap. One Bank (USA), N.A.*,
   No. 4:25-CV-1077-P, 2026 WL 161440 (N.D. Tex. Jan. 21, 2026)......................21

*Broadway Nat'l Bank v. Plano Encryption Techs., LLC*,
   173 F. Supp. 3d 469 (W.D. Tex. 2016)............................................................10, 12

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................11

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) ..............................................................................2, 3

*Caldwell v. Palmetto State Savs. Bank of S.C.*,
   811 F.2d 916 (5th Cir. 1987) ..................................................................................4

*Carabin Shaw, P.C. v. Carabin*,
   No. SA-25-CA-00099-XR, 2025 WL 3215362 (W.D. Tex. Nov. 13, 2025) ...........23

*Care Ambulance Servs., Inc. v. Scott Griffith Collaborative Sols., LLC*,
No. 4:19-CV-00773-O, 2019 WL 13193953 (N.D. Tex. Dec. 13, 2019).......................2, 3, 7, 8

*CDC Real Est. Corp. v. La Biela, L.L.C.*,
No. 24-50626, 2025 WL 2219009 (5th Cir. Aug. 5, 2025) .......................................................9

*Dallas S. Mill, Inc. v. Kaolin Mushroom Farms, Inc.*,
No. 3:05-CV-1890-B, 2006 WL 8437487 (N.D. Tex. Aug. 10, 2006)...................................18

*Delta Brands Inc. v. Danieli Corp.*,
99 F. App'x 1 (5th Cir. 2004) ..............................................................................................10

*Excentus Corp. v. Kroger Co.*,
No. 3:10-CV-0483-B, 2010 WL 3606016 (N.D. Tex. Sept. 16, 2010) ...................................8

*Exxon Corp. v. Oxxford Clothes, Inc.*,
109 F.3d 1070 (5th Cir. 1997) ..............................................................................................23

*Eytalis v. Nat'l Ass'n of Realtors*,
No. 7:24-CV-00147-O-BP, 2025 WL 2054094 (N.D. Tex. June 9, 2025),
*adopted by* 2025 WL 2053096 (N.D. Tex. July 22, 2025) .......................................................18

*For the Gusto Motorsports, Inc. v. Lane*,
No. 3:16-CV-1074-L, 2017 WL 896898 (N.D. Tex. Mar. 7, 2017) .........................................7

*Friedheim v. Hoeber*,
No. 4:20-cv-00335-O, 2020 WL 10893185 (N.D. Tex. Dec. 16, 2020)
(O'Connor, J.) .......................................................................................................................14

*Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*,
694 F. App'x 225 (5th Cir. 2017) ...........................................................................................7

*Geddie v. Seaton*,
No. 3:06-CV-0895-R, 2006 WL 2263335 (N.D. Tex. Aug. 8, 2006).....................................18

*GHER Sols., LLC v. HEB Grocery Co., LP*,
No. 4:19-CV-00655-O, 2019 WL 13214979 (N.D. Tex. Dec. 12, 2019)..................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).............................................................................................................8, 9

*Heroes, Inc. v. Boomer Esiason Hero's Found., Inc.*,
No. CIV. A. 96-1260 (TAF, 1997 WL 335807 (D.D.C. June 6, 1997),
*amended*, No. CIV. A. 96-1260 (TAF), 1997 WL 350097
(D.D.C. June 16, 1997)..........................................................................................................19

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*,
No. 3:16-cv-2410-G, 2017 WL 1036662 (N.D. Tex. Mar. 17, 2017) ...................................16

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
665 F.3d 671 (5th Cir. 2011) ................................................................................3

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
10 F.4th 422 (5th Cir. 2021) .........................................................................14, 15

*Johnson v. United States Dep't of Transp.*,
No. 3:18-CV-02431-M, 2019 WL 7987679 (N.D. Tex. June 26, 2019) .................................13

*Lawson v. U.S. Dep't of Just.*,
527 F. Supp. 3d 894 (N.D. Tex. 2021) ....................................................................4

*Liberty Mut. Ins. Co. v. Liberty Ins. Co. of Tex.*,
185 F. Supp. 895, 127 U.S.P.Q. 312 (E.D. Ark. 1960)..................................................19

*Mann Mfg., Inc. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971) ........................................................................2, 3, 8

*Mission Trading Co. v. Lewis*,
No. H-16-3368, 2017 WL 6935824 (S.D. Tex. July 31, 2017) ...........................................16

*Monster Moto, LLC v. APT Grp., Inc.*,
No. 3:14-CV-2625-N, 2014 WL 11515724 (N.D. Tex. Oct. 21, 2014) ....................................5

*Nana Joes, LLC v. Microbiotic Health Foods, Inc.*,
No. 4:17-CV-00784, 2018 WL 905531 (E.D. Tex. Feb. 15, 2018) ......................................10

*Needbasedapps, LLC v. Robbins Rsch. Int'l, Inc.*,
926 F. Supp. 2d 907 (W.D. Tex. 2013)....................................................................7

*Nursery Decals & More, Inc. v. Neat Print, Inc.*,
No. 3:19-CV-2606-B, 2020 WL 1819885 (N.D. Tex. Apr. 10, 2020) ......................10, 12, 13

*Nuttall v. Juarez*,
984 F. Supp. 2d 637 (N.D. Tex. 2013) ....................................................................4

*Pace v. Cirrus Design Corp.*,
93 F.4th 879 (5th Cir. 2024) .............................................................................9

*Preston v. Seterus, Inc.*,
931 F. Supp. 2d 743 (N.D. Tex. 2013) ...................................................................15

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)......................................................................................18

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*,
655 F. Supp. 2d 679 (S.D. Tex. 2009) ...................................................................19

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ...................................................................................2, 3, 6

*Sonnier v. State Farm Mut. Ins.*,
   509 F.3d 673 (5th Cir. 2007) ...............................................................................................5

*Sting Soccer Grp., L.P. v. Rated Sports Grp., L.P.*,
   No. 3:21-CV-0964-B, 2021 WL 5280972 (N.D. Tex. Nov. 12, 2021).............................21, 22

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
   851 F.3d 440 (5th Cir. 2017) .............................................................................................14

*Texas Tamale Co., Inc. v. CPUSA2, LLC*,
   No. 4:21-CV-3341, 2024 WL 1119417 (S.D. Tex. Mar. 14, 2024) ...........................20, 21, 22

*Transparent Energy LLC v. Premiere Mktg. LLC*,
   No. 3:19-cv-03022-L, 2020 WL 4678438 (N.D. Tex. July 28, 2020 .....................................16

*Trinity Indus., Inc. v. 188 L.L.C.*,
   No. 3:02CV-405H, 2002 WL 31245374 (N.D. Tex. Oct. 2, 2002)......................................3, 7

*Utica Lloyd's of Tex. v. Mitchell*,
   138 F.3d 208 (5th Cir. 1998) .............................................................................................14

*Vera v. Bank of Am., N.A.*,
   569 F. App'x 349 (5th Cir. 2014) ......................................................................................14

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ............................................................................................3, 7

**Statutes**

Lanham Act, 15 U.S.C. §§ 1051 *et seq*.................................................................................1, 6, 15

15 U.S.C. § 1052(b) .............................................................................................................19, 20

15 U.S.C. § 1064(3) ....................................................................................................................23

15 U.S.C. § 1115(b)(3) ................................................................................................................23

15 U.S.C. § 1115(b)(7) ................................................................................................................17

28 U.S.C. § 1391(b)(1) ..................................................................................................................8

28 U.S.C. § 1391(b)(2) ................................................................................................................13

28 U.S.C. § 1391(b)(3) ................................................................................................................13

28 U.S.C. § 1391 (c)(2)..................................................................................................................8

28 U.S.C. § 1406(a) ...................................................................................................................4

Tex. Bus. & Com. Code Ann. § 16.003 .................................................................................20

Tex. Bus. & Com. Code Ann. § 16.051 .................................................................................20

Tex. Bus. & Com. Code § 16.102 ..........................................................................................16

Tex. Civ. Prac. & Rem. Code § 37.001 .............................................................................13, 14

Tex. Gov't Code Ann. tit. 11, § 3100 *et seq.* ........................................................................20

Defendant Texas Precious Metals, LLC ("TPM") moves to transfer this lawsuit under the first-to-file rule or, alternatively, dismiss the First Amended Complaint filed by Plaintiffs State of Texas, Texas Bullion Depository (the "Depository"), and Kelly Hancock, in his official capacity as Acting Texas Comptroller of Public Accounts (the "Comptroller") (collectively, "Plaintiffs") as follows:

## I.  INTRODUCTION

On February 4, 2026, TPM sued the Comptroller and the Depository's Administrator in Texas state court regarding a new program to offer precious metal products to investors and collectors.[1]The core issues in that lawsuit concern TPM's federally registered trademarks, the Comptroller's and Depository Administrator's ultra vires and infringing activities, the resulting consumer confusion and the harm to TPM's reputation and goodwill. Nearly one month later, Plaintiffs removed the case to federal court (the "Western District Action")[2] and filed in this District the instant lawsuit, which concerns the *same* state officials, the *same* trademarks, and the *same* infringing activities at issue in the Western District Action. Accordingly, the first-to-file rule mandates transfer of this second-filed action to the Western District of Texas.[3]

Even setting aside this threshold issue, Plaintiffs' First Amended Complaint is riddled with deficiencies warranting dismissal under Federal Rule of Civil Procedure 12. To start, Plaintiffs filed this lawsuit in an improper venue. As explained herein, and evidenced by Plaintiffs' vague and conclusory venue allegations, the Northern District of Texas lacks any substantial connection to the parties or the facts out of which Plaintiffs' claims arise. Plaintiffs' claims fare no better on

---

[1]*Texas Precious Metals, LLC v. Kelly Hancock et al.*, Cause No. D-1-GN-26-000754, in the 459th Judicial District Court in Travis County, Texas (filed February 4, 2026).

[2]*Texas Precious Metals, LLC v. Kelly Hancock et al.*, No. 1:26-cv-00513-DAE, in the Western District of Texas, Austin Division (Notice of Removal filed March 3, 2026).

[3]In the Western District Action, TPM is seeking leave to amend its complaint to add Lanham trademark infringement and trademark counterfeiting claims, in addition to the existing Lanham Act false advertising claim.

1

the merits. Their declaratory judgment claim, for example, rests on inapplicable statutes, nonexistent elements of a trademark infringement claim, and conclusory allegations that fail to satisfy basic pleading requirements. Plaintiffs' cancellation claim is equally deficient, resting on legal theories foreclosed by the nature of TPM's trademarks and indisputable timeline of the parties' respective use. In short, no matter how this Court examines Plaintiffs' First Amended Complaint—procedurally, jurisdictionally, or on the merits—the conclusion remains the same: it does not belong in this Court.

## II.    LEGAL STANDARD

### A.    First-to File Rule

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). When a party moves to transfer under the first-to-file rule, the second-filed court must examine the two pending cases to see if the subject matter "might substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). If the two cases might substantially overlap, it is "no longer up to the court in [the second-filed case] to resolve the question of whether both should be allowed to proceed." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Rather, "the ultimate determination of whether there actually [is] a substantial overlap requiring consolidation of the two suits … belongs to the United States District Court" presiding over the first-filed case. *Id.*

Critically, two cases need not be "identical"—either in terms of the issues or the parties—for the first-to-file rule to apply. *Save Power Ltd.*, 121 F.3d at 950; *see Care Ambulance Servs., Inc. v. Scott Griffith Collaborative Sols., LLC*, No. 4:19-CV-00773-O, 2019 WL 13193953, at *2 (N.D. Tex. Dec. 13, 2019) (noting that the substantial-overlap inquiry does not turn on "the nature

2

of the claims" or "theories of recovery" in each case). Instead, there need only be "a 'substantial overlap' in the issues and parties." *Care Ambulance Servs., Inc.*, 2019 WL 13193953, at *2 (quoting *Save Power, Ltd.*, 121 F.3d at 950). "Substantial overlap exists 'if the core issues are the same or if much of the proof adduced would likely be identical.'" *Id.* (quoting *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011)). Additionally, courts have found a "substantial relationship" between two cases where the issues raised therein "are similar enough that the cases would be consolidated if filed in the same Court." *Trinity Indus., Inc. v. 188 L.L.C.*, No. 3:02CV-405H, 2002 WL 31245374, at *2 (N.D. Tex. Oct. 2, 2002) (collecting cases).

If the likelihood of substantial overlap exists, then "the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court. *Care Ambulance Servs., Inc.*, 2019 WL 13193953, at *2 (quoting *Int'l Fid. Ins. Co.*, 665 F.3d at 677). It is then up to first-filed court to "decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Cadle Co.*, 174 F.3d at 606. "In the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Mfg., Inc.*, 439 F.2d at 407.

The first-to-file rule serves principles of comity, requiring federal district courts to exercise care to avoid interfering with one another's affairs. *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir. 1985). It also avoids inconsistent rulings and piecemeal resolution of issues which call for a uniform result. *Id.* at 729. The rule also "permits transfer between divisions in the same federal district as well as districts organized under different federal circuits." *Care Ambulance Servs., Inc.*, 2019 WL 13193953, at *2. And here, the rule warrants the transfer of this case to the Western District of Texas.

**B.     Rule 12(b)(3) – Venue**

Federal Rule of Civil Procedure 12(b)(3) permits defendants to seek a case's dismissal or

transfer for "improper venue." Once a defendant moves for dismissal under Rule 12(b)(3), plaintiff has the burden to establish venue is proper. *Lawson v. U.S. Dep't of Just.*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021).

The Court must accept as true the allegations in the plaintiffs' complaint and resolve all factual conflicts in the plaintiffs' favor. *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013). "The Court may consider evidence in the record beyond the facts alleged in the complaint and its proper attachments." *Id*. at 643 (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008)). "If venue is improper, the Court has broad discretion to dismiss the case or, in the interest of justice, transfer the case to any district where venue is proper." *Id*. (citing 28 U.S.C. § 1406(a); *Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987)).

## C.  Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy the *Twombly/Iqbal* standard, the defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

4

possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation modified) (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 679.

### III.    ARGUMENT

**A.    First-to-file rule mandates transfer to the Western District of Texas.**

The Western District Action predates this lawsuit, raises the same core trademark-related issues, and involves the same state officials. The first-to-file rule thus demands transfer and obviates the need for this Court to address the remaining arguments below.[4] To start, it is indisputable that the Western District Action, which was filed nearly one month before this lawsuit, is the first-filed action. *Compare* W.D. Tex. ECF No. 1-5 at 1 (showing TPM filed its original petition on February 4, 2026) *with* ECF No. 1 (showing Plaintiffs filed this lawsuit on March 2, 2026).[5] Equally incontestable is the substantial overlap between these two lawsuits, which both "generally relate to [TPM's] intellectual property rights," namely TPM's federally registered trademarks. *Monster Moto, LLC v. APT Grp., Inc.*, No. 3:14-CV-2625-N, 2014 WL 11515724, at

---

[4]TPM cites to filings in the Western District Action as "W.D. Tex. ECF No. #."

[5]It is legally irrelevant that the Comptroller and Administrator removed TPM's lawsuit—which was originally filed in Texas state court—to federal court on the same day Plaintiffs filed this lawsuit. *See* W.D. Tex. ECF No. 1-5. Indeed, this Court "considers the date of filing in state court to be the relevant benchmark" for determining which suit was first-filed. *Bank of Am. v. Berringer Harvard Lake Tahoe*, No. 3:13-CV-0585-G, 2013 WL 2627085, at *3 (N.D. Tex. June 12, 2013).

*1 (N.D. Tex. Oct. 21, 2014). But it goes deeper.

TPM's claims in the Western District Action, which include claims for declaratory relief and false advertising under the Lanham Act, are substantially rooted in the enforceability of its trademarks. Specifically, these claims are based on the Comptroller's and Administrator's ultra vires production of products (*e.g.*, the State of Texas Coins and Redbacks) that directly infringe on TPM's trademarks, including TPM's Texas silhouette mint mark, and seek to halt the production of those infringing products. *See* W.D. Tex. ECF No. 1-5 at 23–25; W.D. Tex. ECF No. 18 at 30–35. TPM further alleges that these infringing acts—*e.g.*, the Comptroller's and Administrator's use of TPM's trademarks—have caused (and are causing) "concrete competitive and reputational injuries," including "diverted sales, loss of goodwill, and consumer confusion."[6] W.D. Tex. ECF No. 1-5 at 28; W.D. Tex. ECF No. 18 at 4. These core issues are mirrored by this lawsuit.

For example, Plaintiffs (who include the *same* state officials sued by TPM)[7] allege that they are "authorized by law" to sell the infringing products. ECF No. 10 at 6; *see also id.* at 6–8. Additionally, they seek declarations that: there is *no* "likelihood of confusion," they have *not* "infringed or violated" TPM's trademark rights, and their future use of those trademarks will *not* "infringe or violate" TPM's rights. ECF No. 10 at 13–15. Further overlapping with the Western District Action, Plaintiffs also seek an order cancelling the very trademarks at issue in that lawsuit. *See id.* at 15–16.

---

[6]These issues have been extensively addressed in the Western District Action, including in: TPM's Original Petition and First Amended Complaint (*see* W.D. Tex. ECF No. 1-5 at 13–15, 28–30; W.D. Tex. ECF No. 18 at 1–2, 4, 12–23, 30, 34–36); briefing on the Comptroller's and Administrator's Plea to the Jurisdiction (*see* W.D. Tex. ECF No. 1-5 at 170, 172–74, 177, 191, 194–96; W.D. Tex. ECF No. 11 at 3–4); and briefing on TPM's motion for a temporary restraining order and preliminary injunction (*see* W.D. Tex. ECF No. 19 at 2–3, 6, 7–10, 16–21; W.D. Tex. ECF No. 23 at 9–14; W.D. Tex. ECF No. 24 at 3–5, 7–10).

[7]The mere fact that the State of Texas is not a party to the Western District Action does not foreclose application of the first-to-file rule. *See GHER Sols., LLC v. HEB Grocery Co., LP*, No. 4:19-CV-00655-O, 2019 WL 13214979, at *2 (N.D. Tex. Dec. 12, 2019) ("[T]he Fifth Circuit does not require complete identity of the parties") (citing *Save Power, Ltd.*, 121 F.3d at 951).

6

As an initial matter, Plaintiffs' claims read like counterclaims or defenses to the Western District Action. *See Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017) (cases "substantially overlapped" where the first-filed action presented an "affirmative case" and the second-filed declaratory judgment action "assert[ed] defenses"); *For the Gusto Motorsports, Inc. v. Lane*, No. 3:16-CV-1074-L, 2017 WL 896898, at *1 (N.D. Tex. Mar. 7, 2017) (cases substantially overlapped where they were "essentially mirror images of each other"). In fact, Plaintiffs *explicitly tie* their requested declaratory relief to the Western District Action as a means of establishing the existence of a live controversy warranting adjudication of their declaratory judgment claims. *See* ECF No. 10 at 15 ("An actual and justiciable controversy exists about the issues set forth above, as shown by TPM's … lawsuit[] against … the Depository and Comptroller.").

Unsurprisingly, resolving these shared core issues will likely require that each Court simultaneously assess much of the same evidence—*e.g.*, TPM's trademarks, Plaintiffs' use of those trademarks, and incidents of customer confusion. This is textbook substantial overlap. *Care Ambulance Servs., Inc.*, 2019 WL 13193953, at *2. That overlap is made only more substantial given the fact that these lawsuits—which involve shared factual and legal issues—likely would have been consolidated had they been filed in the same district. *Trinity Indus.*, 2002 WL 31245374, at *2; *see* Fed. R. Civ. P. 42(a) (permitting a court to consolidate cases before it that "involve a common question of law or fact"); *Needbasedapps, LLC v. Robbins Rsch. Int'l, Inc.*, 926 F. Supp. 2d 907, 915 (W.D. Tex. 2013) (finding substantial overlap where the court "ha[d] little doubt that [two cases] would have been consolidated" had they been filed in the same district).

Ultimately, the prospect of two federal courts addressing factual and legal issues in parallel proceedings that might substantially overlap invites the very ills the first-to-file rule was designed

to prevent—conflict and inconsistent rulings. *See West Gulf Mar. Ass'n*, 751 F.2d at 728–29. The inconsistencies that this could potentially give rise to are "especially problematic" given this Court's stated interest in "[a]voiding piecemeal litigation in the complex and technical area of … trademark law." *Excentus Corp. v. Kroger Co.*, No. 3:10-CV-0483-B, 2010 WL 3606016, at *4 (N.D. Tex. Sept. 16, 2010).

These issues, however, can be avoided. As explained, the Court need only determine "whether the issues" in the Western District Action and this lawsuit "*might* substantially overlap." *Care Ambulance Servs., Inc.*, 2019 WL 13193953, at *2 (emphasis in original). For the reasons explained above, that question should be answered in the affirmative. Thus, given the absence of anything resembling "compelling circumstances," this lawsuit should be transferred to the Western District of Texas to decide how this case proceeds. *See Mann Mfg., Inc.*, 439 F.2d at 407.

**B.     The Northern District of Texas is an improper venue for this dispute.**

This lawsuit was filed in an improper venue and should be dismissed under Federal Rule of Civil Procedure 12(b)(3). Contrary to Plaintiffs assertion that venue is proper under 28 U.S.C. § 1391(b)(1), (b)(2), and (c), neither subsection lays venue in this District.

**1.     Venue is not proper because TPM does not reside in this district.**

Subsections (b)(1) and (c) allow for a civil action to be brought in "a judicial district in which any defendant resides," which, for the purposes of a corporate defendant in Texas, is deemed to be "any judicial district in which [the] defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(b)(1), (c)(2).

A federal court may exercise personal jurisdiction over a nonresident defendant "if the defendant has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (internal quotations omitted). While

minimum contacts can give rise to general personal jurisdiction or specific personal jurisdiction, neither exists here. *Id.* at 919.

i.       **TPM is not subject to general jurisdiction in this district.**

General jurisdiction exists when a defendant has "sufficiently systematic and continuous contacts with the forum state such that the defendant feels 'at home' in the forum state." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (citation modified). A defendant corporation or limited liability company is considered at home "where its place of incorporation and its principal place of business are located." *Id.*; *CDC Real Est. Corp. v. La Biela, L.L.C.*, No. 24-50626, 2025 WL 2219009, at *2 (5th Cir. Aug. 5, 2025).

TPM, a Texas limited liability company, has its principal place of business in Shiner, Texas, which lies in the Southern District of Texas. Saab Decl. ¶ 3, APP001. Shiner has been TPM's principal place of business since the company's founding in 2011. *Id*. TPM does not have continuous and systematic contacts with the Northern District of Texas such that it could be deemed to be at home there. Plaintiffs attempt to establish such contacts by referencing a TPM office at 2626 Cole Avenue, Suite 322, Dallas, Texas 75204. ECF No. 10 at 3. However, this office is used by a different legal entity, Y'all Street Assets Management LLC ("YSAM"). *Id*. ¶ 4, APP002.

Currently, YSAM is an outpost for capital market offerings that are not yet being traded in the markets. *Id*. The address at 2626 Cole Avenue is the location of a coworking company, Lucid, with whom TPM has a services agreement for temporary office space. *Id*. YSAM uses this temporary office space solely for a line of business—capital markets—that is separate and distinct from the precious metals trading, minting, and depository lines of business of TPM. *Id*. While these capital market funds are currently planned to launch on Nasdaq Texas, there is no trading and there are no fundholders. *Id*. ¶ 6, APP002. Further, TPM has only one employee running the

9

capital markets line of business, and his exclusive role is to launch the funds and explore other, potential capital market offerings. *Id*. ¶ 5, APP002. A single, temporary coworking space used to prepare for a future, distinctly branded line of business[8] conducted by a different entity is not the kind of "continuous and systematic" contact that establishes general jurisdiction. *See Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 474 (W.D. Tex. 2016). Accordingly, TPM is not subject to general jurisdiction in the Northern District of Texas, and general jurisdiction cannot provide the basis for venue under subsection (b)(1).

### ii.    TPM is not subject to specific jurisdiction in this district.

A defendant may be subject to specific jurisdiction where "the suit arises out of or is related to the defendant's purposeful contacts with the forum." *Delta Brands Inc. v. Danieli Corp*., 99 F. App'x 1, 3 (5th Cir. 2004).

For the purposes of the specific-jurisdiction inquiry, a declaratory judgment action raising noninfringement issues arises out of or relates to the activities related to the trademark holder's enforcement of its trademark. *See Nursery Decals & More, Inc. v. Neat Print, Inc*., No. 3:19-CV-2606-B, 2020 WL 1819885, at *6 (N.D. Tex. Apr. 10, 2020); *Broadway*, 173 F. Supp. 3d at 474–75. The relevant inquiry is thus the extent to which the defendant has purposefully directed its enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333–34 (Fed. Cir. 2008) (internal quotations omitted). Examples of activities sufficient to create specific personal jurisdiction in such an action include "initiating judicial or extra-judicial . . . enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly

---

[8]The capital markets line of business is branded as Y'ALL STREET, which is not one of the trademarks at issue here.

doing business in the forum." *Nana Joes, LLC v. Microbiotic Health Foods, Inc.*, No. 4:17-CV-00784, 2018 WL 905531, at *5 (E.D. Tex. Feb. 15, 2018).

Here, TPM has not directed any trademark enforcement activities at the Northern District. To the contrary, TPM's prior trademark enforcement lawsuits in the State were filed in the Western and Southern Districts of Texas—not the Northern District. Saab Decl. ¶¶ 7–8, APP002. Similarly, TPM's ongoing suits against the Depository's manufacturers of the infringing products were filed in the District of Arizona and the District of Oregon. *Id*. ¶¶ 8–9, APP002–3. And TPM's ongoing suit against the Comptroller and the Depository's Administrator—the Western District Action—was originally filed in the District Court of Travis County, Texas. *Id*. ¶ 10, APP003. Prior to filing the ongoing lawsuits, TPM attempted through meetings and discussions to resolve the disputes. *Id*. ¶ 11, APP003. Those meetings and discussions, including with Plaintiffs' representatives, did not occur in the Northern District. *Id*. None of TPM's enforcement activities has any connection to the Northern District. Plaintiffs' declaratory judgment and cancellation action seeks to clear the air of TPM's trademark enforcement, yet, none of those enforcement activities have any connection here. Because TPM is not subject to general or specific jurisdiction in the Northern District, it does not "reside" here and venue is improper under subsections (b)(1) and (c).

### iii. Exercising personal jurisdiction over TPM would be unfair and unreasonable.

Moreover, the exercise of personal jurisdiction over TPM in the Northern District would fail the reasonableness prong of the due process analysis. Courts consider whether the assertion of jurisdiction comports with "fair play and substantial justice," weighing factors including the burden on the defendant, the forum's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Here, exercising jurisdiction in the Northern District would be fundamentally unfair and unreasonable. As detailed above, neither TPM nor Plaintiffs are located in the Northern District, and none of TPM's trademark enforcement activities—from which this dispute arises—have any connection to this forum. A related suit is already pending in the Western District of Texas, where Plaintiffs are located and where the bulk of enforcement activity has occurred. Requiring the parties to litigate in the Northern District—a forum with no meaningful connection to either side or to the underlying dispute—when the Western District is plainly the more logical and appropriate forum, would impose an unnecessary burden and serve no legitimate interest. Accordingly, considerations of fairness independently foreclose personal jurisdiction in this District.

### 2. Venue is not proper because no substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

Venue is also improper under subsection (b)(2) because no "substantial part of the events or omissions giving rise to the claim occurred" in this District. While courts within the Fifth Circuit have proffered varying standards when determining what constitutes "substantial part of the events", neither supports venue here. *See Broadway,* 173 F. Supp. 3d at 480; *Am. Univ. Sys., Inc. v. Am. Univ.,* 858 F. Supp. 2d 705, 717 (N.D. Tex. 2012); *Nursery,* 2020 WL 1819885 at *11.

Under the standard articulated in *Broadway,* the proper analysis is focused on where the defendant and its trademarks, patents, or copyrights are physically located and "where the bulk of the enforcement activities have taken place." *Broadway,* 173 F. Supp. 3d at 480. Applying this standard, as set out above, none of TPM's enforcement actions were targeted to the Northern District of Texas or residents residing therein.

Alternatively, *Nursery Decals* holds that "a substantial part of the events or omissions giving rise to such an action" refers to where a substantial part of the infringing activity occurred. *Nursery,* 2020 WL 1819885, at *11. But even under this standard, venue is improper. To start,

Plaintiffs tellingly do not affirmatively allege that infringing activity is occurring in this District. Rather, they merely state that "*TPM* alleges" such activity is occurring in this District. ECF No. 10 at 2–3 (emphasis added). These conclusory allegations cannot support venue. *See Johnson v. United States Dep't of Transp.*, No. 3:18-CV-02431-M, 2019 WL 7987679, at *3 (N.D. Tex. June 26, 2019) ("[C]onclusory allegations, speculation, and unsubstantiated assertions cannot be used to establish proper venue."). In any event, an allegation that a different party claims activities are occurring in this District is not the same as an allegation that such activities are indeed occurring. Second, Plaintiffs do not allege any facts indicating that the alleged intra-District activity is "substantial" as required by subsection (b)(2). *Cf. Nursery*, 2020 WL 1819885, at *11 (plaintiff established substantiality by presenting specific, quantifiable evidence that over 25 percent of its Texas sales occurred in the district).

Finally, the court in *American University System* confirmed that, regardless of which standard applies, the § 1391(b)(2) inquiry in a declaratory judgment action for non-infringement must focus on the conduct giving rise to the plaintiff's claims—not on the defendant's sales, marketing, or general presence in the forum. *Am. Univ. Sys.*, 858 F. Supp. 2d at 717. As explained above, the evidence in that regard supports a transfer of venue.

In sum, regardless of which standard this Court applies, Plaintiffs have not pled sufficient facts to show that the allegedly infringing activity was substantially focused in the Northern District of Texas.[9]

**C.    Plaintiffs' claim for declaratory relief fails as a matter of law.**

**1.    Plaintiffs cannot obtain relief under the Texas Declaratory Judgment Act.**

Plaintiffs purport to assert a claim and seek relief under the Texas Declaratory Judgment

---

[9] Venue is also improper under 28 U.S.C. § 1391(b)(3). This fallback provision is inapplicable because there plainly are other districts in which this action may be brought.

13

Act (the "TDJA"). *See* ECF No. 10 at 15 (citing Tex. Civ. Prac. & Rem. Code § 37.001). The Fifth Circuit has held, however, that "the TDJA is a procedural, and not a substantive, provision and therefore does not apply to actions in federal court." *Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). Plaintiffs' claim for declaratory relief under the TDJA should therefore be dismissed. *See Friedheim v. Hoeber*, No. 4:20-cv-00335-O, 2020 WL 10893185, at *9 (N.D. Tex. Dec. 16, 2020) (O'Connor, J.) (dismissing TDJA claim).

2.      **Plaintiffs are not entitled to declaratory judgment on their theory that TPM cannot show that Plaintiffs are using TPM's trademarks "as marks."**

In their Amended Complaint, Plaintiffs assert a claim seeking declaratory judgment of non-infringement based in part on Plaintiffs' theory that TPM "cannot show that Plaintiffs are using [TPM's trademarks] as marks." ECF No. 10 ¶ 52; *see also* ¶ 57 (Among other factors contributing to the lack of any likelihood of confusion, the Depository is not using the shape of the State . . . as marks"), ¶ 58 ("Because the Depository is not using an outline of the State of Texas . . . as marks and there is no likelihood of confusion, the Depository has not infringed."). In other words, Plaintiffs seek declaratory relief—at least in part—on the theory that TPM bears the burden, but cannot establish that, Plaintiffs' use of TPM's trademarks "as marks."

To prevail on a claim for trademark infringement, a trademark owner must plead and prove that: (1) it possesses a legally protectable trademark and (2) the alleged infringer's use of the trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 426 (5th Cir. 2021) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017)). Put simply, the likelihood of consumer confusion is the gravamen for any action of trademark infringement—without regard to whether the alleged infringer is using the trademark "as a mark." *Id*. Plaintiffs' "use as a mark"

14

theory underlying its declaratory judgment claim for non-infringement seeks to impose on TPM the burden to prove a nonexistent element of a trademark infringement claim.

*Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743 (N.D. Tex. 2013) is instructive. There, plaintiffs asserted claims for wrongful foreclosure and declaratory judgment. To cast doubt on the propriety of the foreclosure and defendants' status as assignees of the promissory note and deed of trust to the property, plaintiffs relied on a number of legal theories and arguments to support their claims. 931 F. Supp. 2d. at 755. One of those theories was that the assignments of the plaintiffs' mortgage were invalid and that defendants lacked authority to foreclose because the assignments were not recorded. *Id*. Defendants countered that, under Texas law, they had no obligation to record any of the assignments and that plaintiffs' claim under this theory failed. *Id*. The Court agreed, noting that recordation is not required under the Texas Property Code and finding "any alleged failure by Defendants to record assignments of the Note does not give rise to a claim based on wrongful disclosure, regardless of whether the claim is packaged as a declaratory judgment action or otherwise." *Id*. at 756. The Court held that plaintiffs therefore failed to state a claim upon which relief can be granted and granted defendants' motion to dismiss "insofar as it is based on failure to record assignments." *Id*.

The same reasoning supports dismissal here of Plaintiffs' declaratory judgment claim to the extent it is based on TPM's failure to show Plaintiffs' use of TPM's trademarks "as a mark." Whether asserted under the Lanham Act or Texas common law, a trademark infringement claimant need only show it possesses a legally protectable trademark, and that the alleged infringer's use of that trademark creates a likelihood of confusion. *Jim S. Adler, P.C.*, 10 F.4th at 426. Any alleged failure by TPM to show Plaintiffs' use of TPM's trademarks "as a mark" does not give rise to a claim for declaratory judgment of non-infringement. Plaintiffs' declaratory judgment claim should

15

therefore be dismissed insofar as it is based on Plaintiffs' imposition on TPM of the burden to prove a nonexistent element of a trademark infringement claim—to show Plaintiffs' use of TPM's trademarks "as marks."

> **3.** **Plaintiffs are not entitled to declaratory relief under Tex. Bus. & Com. Code § 16.102 because Plaintiffs do not allege any trademarks registered with the Texas Secretary of State.**

Plaintiffs assert a claim and seek relief for declaratory judgment of non-infringement on the grounds that TPM cannot prove the elements of trademark infringement under Texas Business and Commerce Code Section 16.102. ECF No. 10 at 13. Several courts in the Fifth Circuit, including in this district, have held that registration of the asserted trademark with the Texas Secretary of State is an essential element of a trademark infringement claim under Section 16.102. *See Transparent Energy LLC v. Premiere Mktg. LLC*, No. 3:19-cv-03022-L, 2020 WL 4678438, at 8 (N.D. Tex. July 28, 2020) ("[T]he language of § 16.102 plainly requires Texas registration."); *Mission Trading Co. v. Lewis*, No. H-16-3368, 2017 WL 6935824, at *5 (S.D. Tex. July 31, 2017) ("Nowhere in Plaintiff's first amended complaint does it allege that its trademarks are registered under Texas law. Therefore, Plaintiff's claim under . . . § 16.102 fails as a matter of law."), *adopted by* 2017 WL 4941408 (S.D. Tex. Nov. 1, 2017).

Though Plaintiffs purport to assert a claim for declaratory judgment of non-infringement under Section 16.102, Plaintiffs do not include a single allegation of any trademark registrations with the Texas Secretary of State. Plaintiffs therefore "fail to state a claim for declaratory judgment because they fail to demonstrate . . . that a justiciable controversy exists and that the controversy will be resolved by the declaration sought." *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-cv-2410-G, 2017 WL 1036662, at *4 (N.D. Tex. Mar. 17, 2017). Plaintiffs' declaratory judgment claim of non-infringement under Section 16.102 should be dismissed. *See Transparent Energy*, 2020 WL 4678438, at *8 (granting motion to dismiss trademark infringement claim under § 16.102

16

because the complaint did not allege that plaintiff's mark was registered with the state).

### 4. Plaintiffs have not sufficiently pled priority.

Additionally, Plaintiffs' First Amended Complaint does not adequately plead priority of use. "The exclusive right to a trademark belongs to one who first uses it in connection with specified goods." *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975). Indeed, ownership of a mark "accrues when goods bearing the mark are placed on the market." *Id*. Yet Plaintiffs repeatedly plead generalized historical assertions rather than trademark use on specified goods. They invoke the Lone Star flag's association with Texas sovereignty "since the days of the Republic," the shape of the State as it has existed historically, and the Capitol Dome's dedication in 1888. ECF No. 10 at 2–3. None of these allegations identify the placement of a mark on any good or service, much less on bullion or redbacks—the specified goods at issue here. Plaintiffs also assert that the State has sold commemorative coins and promotional items "for years," but provide no dates of first use. ECF No. 10 at 18. These threadbare allegations amount to nothing more than conclusory assertions of use. Finally, Plaintiffs cite a 2004 U.S. Mint quarter. But that quarter is a coin—not bullion—and the source of those goods is the federal government, not the State. ECF No. 10 at 19. Plaintiffs' priority theory is conclusory and should be dismissed as a matter of law.

### 5. Plaintiffs failed to properly plead an antitrust claim.

Under their declaratory-judgment claim, Plaintiffs assert that TPM is "using its alleged marks to violate the antitrust laws of the United States." ECF No. 10 at 14 (citing 15 U.S.C. § 1115(b)(7)). But Plaintiffs failed to properly plead an antitrust claim. For example, Plaintiffs were required to allege an antitrust injury, *i.e.*, an injury attributable to an anti-competitive aspect of the practice under scrutiny. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). The injury Plaintiffs identify is TPM filing lawsuits against manufacturers, as well as the Western

17

District Action. *See* ECF No. 10 at 11–13. But for a lawsuit to inflict an antitrust injury, it must be "objectively baseless and intended to interfere directly with the business relationships of a competitor." *Dallas S. Mill, Inc. v. Kaolin Mushroom Farms, Inc.*, No. 3:05-CV-1890-B, 2006 WL 8437487, at *9 (N.D. Tex. Aug. 10, 2006) (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993)). Plaintiffs make no such allegations of frivolity or intent with regard to TPM's lawsuits. To the contrary, in the Western District Action, Judge Ezra noted in his order on TPM's motion for a temporary restraining order that TPM "has raised serious questions as to the scope of [the Depository's] statutory authority and the meaning of 'promotional items' in Chapter 2116." W.D. Tex. ECF No. 25 at 7. He also noted, as to TPM's false advertising claim, that its evidence of actual consumer confusion "is not trivial and may support a confusion-based theory." *Id.* at 8.

Additionally, a "prerequisite to any antitrust claim" is alleging "a relevant market in which the anticompetitive effects of the challenged activity can be assessed." *Geddie v. Seaton*, No. 3:06-CV-0895-R, 2006 WL 2263335, at *5 (N.D. Tex. Aug. 8, 2006). That market must consist of "a market for the specific product at issue, the market for reasonable interchangeable products, and a geographic market, or the area in which sellers of the relevant product effectively compete." *See Eytalis v. Nat'l Ass'n of Realtors*, No. 7:24-CV-00147-O-BP, 2025 WL 2054094, at *5 (N.D. Tex. June 9, 2025), *adopted by* 2025 WL 2053096 (N.D. Tex. July 22, 2025) (noting that courts "routinely dismiss antitrust claims that define a market without these basic allegations") (citation omitted). Plaintiffs do not even attempt to properly allege the relevant market; indeed, the word "market" appears nowhere in their First Amended Complaint. *See* ECF No. 10. Accordingly, given Plaintiffs' failure to properly allege an antitrust claim, any claim for declaratory relief predicated on an alleged antitrust violation must be dismissed.

**D.        Plaintiffs' trademark-cancellation claim fails as a matter of law.**

**1.        TPM's Marks are not barred from registration under 15 U.S.C. § 1052(b).**

Lanham Act § 1052(b) acts as a bar to federal registration of any mark comprising "the flag or coat of arms or other insignia of the United States, or of any state or municipality, or of any foreign nation or any simulation thereof." 15 U.S.C.A. § 1052(b). Here, none of TPM's Marks comprise the flag or the coat of arms of the State of Texas. Further, none of TPM's Marks can be plausibly alleged as an insignia of the State of Texas as a matter of law.

The phrase "other insignia" in § 1052(b) means a symbol that acts as an emblem of "governmental authority" and is not to be interpreted broadly. *See RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 713–14 (S.D. Tex. 2009); Trademark Manual of Examining Procedure, § 1204 ("other insignia" "should not be interpreted broadly, but should be considered to include only those emblems and devices which also represent such authority and which are of the same general class and character as flags and coats of arms."). Monuments, statutes, buildings or objects associated with a government are not barred from federal trademark registration. 2 McCarthy on Trademarks and Unfair Competition § 19:78 (5th ed.) (citing *Liberty Mut. Ins. Co. v. Liberty Ins. Co. of Tex.*, 185 F. Supp. 895, 908, 127 U.S.P.Q. 312 (E.D. Ark. 1960) ("That the Statue of Liberty is not a part of the 'insignia of the United States' is too clear to require discussion.")). As the District of Columbia explained, buildings like the United States Capitol "may evoke certain sentiments among members of the public" but any such message is "incidental to the building's primary function: to provide a place for the legislative branch to carry out its business." *Heroes, Inc. v. Boomer Esiason Hero's Found., Inc.*, No. CIV. A. 96-1260 (TAF, 1997 WL 335807, at *5 (D.D.C. June 6, 1997), *amended*, No. CIV.A. 96-1260 (TAF), 1997 WL 350097 (D.D.C. June 16, 1997). Accordingly, the United States Capitol building was not barred from federal trademark registration as insignia of the United States under § 1052(b).

19

Applied here, TPM's trademarks are clearly not emblems of governmental authority for the state. TPM's Texas Silhouette mark, for example, is the shape or map of Texas; it is not a representation of the power of government. Indeed, if the Texas Silhouette evokes any sentiments among the public, they are ones of bold independence *from* governmental overreach, fierce pride, and a distinct self-reliance. TPM's Capitol, Cowboy Capitol and Rotunda marks are buildings associated with government functions and are, therefore, not insignia that would be barred under § 1052(b). As a matter of law, TPM's Marks do not comprise "the flag or coat of arms or other insignia" of the State of Texas and are not barred from federal trademark registration under 15 U.S.C.A. § 1052(b).

Finally, Plaintiffs' citation to the Texas Business and Commerce Code is misplaced. ECF No. 10 at 15. That statute provides the requirements for registering a mark on the *state* register. Tex. Bus. & Com. Code Ann. § 16.051 (West).[10] It is irrelevant to the issue here, namely the requirements for marks on the *federal* register. Nor is the Business and Commerce Code where one would locate information about "insignia of the State of Texas." ECF No. 10 at 16. Rather, the Texas Government Code Title 11 *State Symbols and Honors; Preservation* defines everything from the state flag, state seal, and state arms to the state bird, state flower and state tree. *See* Tex. Gov't Code Ann. tit. 11, § 3100 *et seq.* (West). These statutes were not mentioned by Plaintiffs, likely because the shape or map of Texas is conspicuously absent. *See e.g.*, § 3101.001 (providing description of the State Seal, which includes items like the Alamo and six flags over Texas).

**2.     TPM's Marks cannot be cancelled as generic.**

The test for genericness is "whether the public perceives the term primarily as the designation of the article." *Texas Tamale Co., Inc. v. CPUSA2, LLC*, No. 4:21-CV-3341, 2024 WL

---

[10]Plaintiffs cite Tex. Bus. & Com. Code Ann. § 16.003. However, Plaintiffs are quoting Tex. Bus. & Com. Code Ann. § 16.051. Section 16.003 is likewise irrelevant to the matter at issue here.

1119417, at *6 (S.D. Tex. Mar. 14, 2024). A generic term "describes a class of products or services of which a particular item is a member, such as 'fish,'" while a descriptive mark is one that "identifies a characteristic or quality of the product or services, such as 'speedy.'" *Id.* at 5. "Geographic terms such as 'Texas' are considered descriptive" because they describe where products are made or services are offered. *Id.* To assess a registered mark, the proper analysis considers whether the mark is generic as to the class of goods or services for which it is registered. *Id.* at *7.

Applied here, TPM's trademarks are not generic. TPM's registrations of the Texas Silhouette, Rotunda, Capitol and Cowboy Capitol are for precious metals goods in class 14 (ECF No. 10 ¶¶ 31, 33–34; Registration Nos. 4,404,997, 6,031,099, 6,031,097 and 6,031,098, the "TPM Supplemental Marks"). TPM's registrations of the Texas Silhouette are also for precious metals goods in class 14 and online retail store services for precious metals in class 35 (ECF No. 10 ¶¶ 37, 40; Registration Nos. 5,113,004 and 5,113,005, the "TPM Principal Registrations"). None of TPM's trademarks could be primarily perceived as the actual "designation of the article", namely for precious metals goods or the sale of such items. Therefore, they are not generic. *See Sting Soccer Grp., L.P. v. Rated Sports Grp., L.P.,* No. 3:21-CV-0964-B, 2021 WL 5280972, at *4 (N.D. Tex. Nov. 12, 2021) (holding, at the motion to dismiss stage, that the mark "TEXAS CUP is clearly not a generic term that names a class of goods or services, rather than any particular feature or exemplification of the class.") (internal quotations omitted).

In addition, TPM trademarks on the Register for more than five years are incontestable and therefore cannot be challenged as merely descriptive.[11] The recent *Texas Tamale Co.* case is

---

[11] *See* Exs. 1–4, APP006-15 for TPM's relevant registrations and their related incontestable status. *Bradley v. Cap. One Bank (USA), N.A.,* No. 4:25-CV-1077-P, 2026 WL 161440, at *2 (N.D. Tex. Jan. 21, 2026) ("A court may

instructive. There the plaintiff owned incontestable federal registrations for "Texas Tamales" in classes 29 and 30 for various food products, including tamales. *Id.* The defendant claimed "Texas tamale" was a commonly known generic name for a type of tamale made in Texas. *Id.* In rejecting defendant's argument even as to the single product of tamales, the court explained:

> Here, "tamale" is a generic name for a class of products; "Texas" is descriptive of a characteristic or quality of the products, including where the producer of the product is located. A mark that is merely descriptive, like "Texas Tamale," may acquire secondary meaning. However, according to the Supreme Court's decision in *Park 'N Fly, Inc.*, Defendant cannot defend Plaintiff's infringement action on grounds that "Texas Tamale" is a merely descriptive mark [due to incontestable status of the registration].

*Id.* at \*8 (citations omitted). *Texas Tamale Co.* also expressed doubt that an alleged infringer could challenge an incontestable mark as having been generic *prior* to registration, "rather than as having *become* generic at some point after achieving incontestable status." *Id.* at \*6 (recognizing the analytic wrinkle as a real "dilemma") (emphasis in original).

The same dilemma presents itself here. Plaintiffs do not argue that any of TPM's trademarks are merely descriptive. Instead, Plaintiffs argue that TPM's trademarks have always been generic due to their historical relevance. ECF No. 10 ¶¶ 28–41, 68. Failure to allege that the incontestable marks have *become* generic is fatal. In addition, Plaintiffs make no relevant allegations as to the critical test for genericness in the context of registered marks—whether the mark is generic as to the class of goods or services for which it is registered. *See, e.g.*, ECF No. 10 ¶¶ 14–17, 68. Finally, Plaintiffs' attempt to argue "mere descriptiveness under the guise of genericness" should be rejected for TPM's incontestable marks. *Texas Tamale Co.*, at \*8.

---

consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.") (internal quotations omitted).

### 3.    Plaintiffs have not sufficiently pled misrepresentation of source.

Plaintiffs allege that TPM's trademarks should be cancelled because TPM is using them "to misrepresent the source of its goods and services." [12] *See* ECF No. 10 at 16 (citing 15 U.S.C. § 1064(3)). To the extent these allegations form the basis of a "cancellation claim for misrepresentation," Plaintiffs were required to plead "that the registrant," TPM, "sought to pass off its goods as those of" Plaintiffs. *Carabin Shaw, P.C. v. Carabin*, No. SA-25-CA-00099-XR, 2025 WL 3215362, at *7 (W.D. Tex. Nov. 13, 2025). Plaintiffs make no such allegations. Nor could they. As Plaintiffs admit, TPM began using its trademarks in commerce around 2013—*over a decade before* Plaintiffs started selling their infringing goods in December 2025. *See* ECF No. 10 at 8, 9. Thus, the notion that TPM sought to pass its goods off as Plaintiffs' goods (which only existed months ago) is nonsensical, not plausibly pled, and should be dismissed.

### IV.    CONCLUSION

Under the first-to-file rule, this later-filed action should be transferred to the Western District of Texas. Alternatively, the Plaintiffs' First Amended Complaint should dismissed under Rule 12(b)(3) because venue is improper in this district and under Rule 12(b)(6) because the First Amended Complaint fails to state a plausible cause of action.

---

[12]In the context of their declaratory judgment claim, Plaintiffs similarly allege misrepresentation under 15 U.S.C. § 1115(b)(3). ECF No. 10 at 14. However, "[t]his subsection provides a defense…of unclean hands, only applicable when the origin or source of goods distributed under the subject mark is misrepresented" and based on trademark owner's conduct vis-à-vis the alleged infringer. *Exxon Corp. v. Oxxford Clothes, Inc*., 109 F.3d 1070, 1078 (5th Cir. 1997) (internal quotations omitted). As explained herein, no such misrepresentation occurred (or is even alleged to have occurred).

Dated: March 27, 2026                    Respectfully submitted,

                                         /s/ *Shannon Zmud Teicher*
                                         Shannon Zmud Teicher
                                         Texas Bar No. 24047169
                                         JACKSON WALKER LLP
                                         2323 Ross Avenue, Suite 600
                                         Dallas, Texas 75201
                                         T: (214) 953-5987 | F: (214) 661-6844 |
                                         steicher@jw.com

                                         Tori C. Emery
                                         Texas Bar No. 24126228
                                         JACKSON WALKER LLP
                                         1401 McKinney, Suite 1900
                                         Houston, Texas 77010
                                         T: (713) 752-4428 | F: (713) 752-4221 |
                                         temery@jw.com

                                         Allison B. Allman
                                         Texas Bar No. 24094023
                                         JACKSON WALKER LLP
                                         777 Main Street, Suite 2100
                                         Fort Worth, Texas 76102
                                         T: (817) 334-7200 | F: (817) 334-7290 |
                                         aallman@jw.com

                                         *Attorneys for Defendant Texas Precious Metals, LLC*


## CERTIFICATE OF CONFERENCE

On Tuesday, March 24, 2026, counsel for Defendant Texas Precious Metals LLC, Shannon Teicher, discussed with counsel for Plaintiffs, David Bryant, Ali Thorburn and Munera Al-Fuhaid, regarding Defendant's Motion to Transfer or, Alternative, Dismiss. After conferring, Plaintiffs stated that they are opposed.

                                         /s/ *Shannon Zmud Teicher*
                                         Shannon Zmud Teicher

24

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, a true and correct copy of the foregoing document was electronically served through the electronic filing system on all counsel of record.

/s/ *Shannon Zmud Teicher*
Shannon Zmud Teicher